## Joel Howe *versus* Ball B. Willis *& al.*

The levy of an execution upon land held by the debtor, under a deed not recorded, will not be defeated by his subsequent surrender of his deed to his grantor, and the cancellation of it, for thereby they could not divest the creditor of the title he had acquired by the levy.

And, if the grantor afterwards executes a release to another party, such deed will convey no title to the premises.

It may be fairly inferred that the person taking such release had notice of the former deed, if the grantee in the first deed had, for years before the levy, been in the exclusive possession of the premises, and after the levy such releasee never claimed title to, entered upon the land, or interfered with the possession of the execution creditor.

Reported from *Nisi Prius*, Walton, J., presiding.

This was a writ of entry, dated July 30, 1861.

At the November term of this Court, (second term,) the tenants pleaded the general issue, which was joined, and filed specifications of defence. At the November term, 1862, the tenant Willis filed a disclaimer, or consent that plaintiff might take judgment of part of the demanded premises.

The demandant read in evidence a deed of quitclaim of the demanded premises, from *Enoch Bartlett,* one of the tenants, to him, dated December 24, 1844, and recorded March 8, 1859.

The demandant here rested, claiming to have made out a *prima facie* case.

The tenants then opened their defence, claiming only that portion of the demanded premises not disclaimed as aforesaid.

It was agreed that Phineas Howard, senior, late of Hanover, in the county of Oxford, was the owner of the demanded premises, and it was claimed by both parties that their titles, respectively, were derived from him; and that "Howard's Grant," otherwise called "Howard's Gore," is a part of what is now Hanover, in said county. The tenants then offered an office copy of quitclaim from said Phineas Howard to Solomon J. Hayward, who married a daughter of said Phineas, dated Sept. 10, 1833, acknowledged May 21, 1835, and recorded January 3, 1859, covering the demanded premises. Also a deed of quitclaim from said Solomon J. Hayward and wife, and others, heirs at law of said Phineas Howe, and to the tenant Enoch Bartlett, dated December 30, 1858, and recorded January 3, 1859, of the demanded premises.

The tenants also offered in evidence a quitclaim deed from said Enoch Bartlett, one of the tenants, to Henry F. Blanchard, of the same premises conveyed by the said Phineas to said Solomon J. Hayward, dated January 1, and recorded January 9, 1860. Also a deed of warranty from said Henry F. Blanchard to Oliver S. Long, of same premises, dated October 4, and recorded October 31, 1860. Also a quitclaim deed from said Long to the tenant Willis, of the same premises, dated January 23, and recorded April 29, 1861.

The demandant then offered office copies of an execution in favor of Stephen Estes, and against John Peabody, which issued from the Circuit Court of Common Pleas, in the First Eastern Circuit, October term, 1820, in the county of Oxford, and was dated October 9, 1820, and the return of the levy thereof on the demanded premises. The tenants objected to the levy, but the objections were overruled and it

was admitted. The demandant then offered the following deeds, which embrace the demanded premises:—deed of quitclaim from Edmund Estes to John Estes, dated July 14, 1844, and, though not recorded, it was read in evidence by consent; deed of quitclaim from said John Estes to the demandant, dated Dec. 16, 1844, recorded March 8, 1859.

Deed of quitclaim from James Estes and others, who, it was admitted, were the sole heirs of Stephen Estes, to Peter C. Virgin, (office copy,) dated March 14, 1844, and recorded.

Deed of quitclaim, (office copy,) Peter C. Virgin to Enoch Bartlett, the tenant, dated March 19, 1844.

The demandant then called *Phineas Howard*, who testified that he resides in Milford, Massachusetts, and stated that he is 71 years of age; that he is son of Phineas Howard, senior; that he was born in Hanover, Maine, and resided there many years; that his father died about 14 or 15 years since.

"I know that my father wrote a deed of the demanded premises to John Peabody, then of Howard's Grant, (now called Hanover.) I saw him write the deed, and heard him read it to Peabody. I did not read it. Asa Howard and Lovina Howard witnessed it, and Francis Keyes, Esq., took the acknowledgment of the deed. He was of Rumford.

"My father then gave the deed to said Peabody. I know that he paid my father for the land, in neat stock, and a colt. Don't now recollect the amount. I knew Francis Keyes, he resided in Rumford, and is dead—died some years since. Asa Howard and Lovina Howard are both dead.

"Mr. Peabody, before mentioned, soon after built a house on the lot—a log house, and a barn—and lived there a number of years. I was about 15 years old when the deed was made. I was born in October, 1791; said John Peabody is dead. I lived with my father several years after the deed was made."

The demandant had seasonably notified the tenants to pro-

duce, at this trial, a paper in their possession, alleged by him to be the deed before mentioned from Phineas Howard, senior, to said John Peabody, which had never been recorded. The paper was produced by the tenants and it was handed to the witness — who was inquired of respecting it. He said he could not say that it was the same, the names of the signer and witnesses not now appearing on it.

*Reuben B. Foster* testified : — "I reside in Hanover. I knew Phineas Howard, senior, father of the witness, (Phineas Howard.) I was well acquainted with him. He has been dead about 15 years." The paper marked B, aforesaid, was handed to the witness. He stated, — "I have seen this paper before now. Enoch Bartlett, one of the tenants, said that there was a deed from Phineas Howard (senior) to John Peabody, and said he had got it in his possession — and it was produced. Col. Joel Howe, (the demandant,) went over to Bartlett's, and got it by Bartlett's request. I think that this is the paper."

Enoch Bartlett then said, "that the demandant had a good title, and he had the deed — and sent Joel Howe for it, and it was then produced. Bartlett said it was given to Peabody, and that Peabody gave it up, and that Howard took his name off. We did not then go into that.

"This was about four years ago last December, that I saw it. The demandant then requested his son to take a copy of it, and he took it; and this copy now shown to me by the demandant was the copy taken at that time. We used the old deed to run the land now demanded. We *then* run out the land by it. George E. Smith helped me run it at the demandant's request. The defendant Bartlett was there present, and knew that we run by it, and said that it was the right one to run by. He did not tell me where he got it.

"I had conversation with Phineas Howard and with John Peabody, about the land. I wanted to buy this tract, — the demanded premises, — called the Peabody tract, of Phineas Howard, senior. I went to him in 1826 in order to buy it.

He said, if I wanted to buy it, I must go to John Peabody to buy it, as he had once deeded it to said Peabody, and he had paid him for it. That he would deed it to me by Peabody's consent. He talked over the title — we spoke of it, (the title.) He said that Stephen Estes had levied on it, and that Peabody had given up the deed to him. He said he supposed that Peabody thought that, as the deed was not recorded, it would defeat the levy, by giving up the deed. I then went and saw Peabody about it. Peabody went off after that interview which I had with him. I then went to Phineas Howard, senior, again, to see if he would not then sell the land to me. But he said that Peabody had requested him to convey the premises to somebody in Vermont — and that he had so conveyed. Stephen Estes went away about 1810, was never back after that, so far as I know. I was well acquainted with him — never heard of him since. There was a rumor of his death, some two or three years after he left."

The deed of Solomon J. Hayward to Enoch Bartlett, one of the defendants, of the premises in controversy, describes them, as "known as the Peabody lot, and being the same premises as set off on execution in favor of Stephen Estes."

The case was withdrawn from the jury to be submitted to the full Court, who are to have jury powers as to the evidence.

The case was argued by

*Howard & Strout*, for the demandant, and by

*D. Hammons*, for the defendants.

The opinion of the Court was drawn up by

APPLETON, C. J. — The parties to this suit claim to derive their respective titles from one Phineas Howard, who is admitted to have been the owner of the demanded premises.

It is satisfactorily proved that Howard, in 1806, by deed of warranty, duly acknowledged but not recorded, convey-

ed the land in controversy to John Peabody, who immediately entered into possession thereof, paid therefor, cultivated the land as a farm, and continued his occupation till 1820, when Stephen Estes acquired the title thereto, by virtue of a levy on an execution in his favor against said Peabody. By the levy, the estate, before in Peabody, was transferred to Estes, who, being once seized, is presumed to remain so seized until a disseizin shown. The legal seizin carries with it the possession. The estate thus acquired was conveyed by the heirs of Estes to Peter C. Virgin, in 1841, from whom, by various mesne conveyances, the plaintiff derives his title.

The plaintiff, therefore, must recover unless the tenants can impeach his title.

It is insisted that the levy is void, because the judgment creditor was dead at the time of the levy. But the proof entirely fails to show such to be the fact. From the testimony of Phineas Howard, jr., it is in proof that Estes was at home in 1820, when his attachment was made. From the officer's return it appears he delivered seizin to the creditor, who, having thus both seizin and title, is presumed to continue in possession until a disseizin is established. If the judgment debtor remained on the premises after the levy, it was as tenant to the judgment creditor.

It is in proof that Peabody, who lived on the place until 1823, after the levy, surrendered his deed to Howard, his grantor, by whom it was cancelled. But this cancellation could neither divest Estes of the title acquired by the levy, nor transfer to Howard the land he had previously conveyed. The estate of Estes was unaffected thereby. *Barrett v. Thorndike*, 1 Greenl., 72.

After the cancellation of the deed from Howard to Peabody, the former, on the 10th of Sept., 1833, released to Solomon J. Hayward, his son-in-law, the land in dispute. But this conveyed no title, for Howard had nothing to convey. He had parted with his estate in the premises to Peabody by deed of warranty twenty-five years before. Peabody had entered and continued in possession until the

levy; after which the judgment creditor became seized. Peabody, so long as he remained, must be deemed, in the absence of proof to the contrary, as his tenant at will. When he abandoned the premises the seizin would be in Estes, and the law would regard the possession to follow the legal title unless the contrary be shown. The possession of Peabody and of Estes continued for more than twenty-five years.

When Howard conveyed to his son-in-law he had no seizin of the premises, either by right or wrong. As the law then stood, a conveyance by one disseized was unlawful and void, and passed no title to the grantee. *Brinley* v. *Whiting*, 5 Pick., 348. But in the case cited, the one disseized had the title, but not the seizin. Much more then could not one, who had neither the seizin nor the title, convey by deed of quitclaim or release, what he did not own.

But Peabody had been for years in the open and exclusive possession of the lot in controversy, claiming it under his deed and improving it as his own. Hayward never claimed any interest therein; never went upon the land, nor in any way interfered with the possession of Estes or his heirs. Under the circumstances of the case, it is fairly inferrable that he had notice of the conveyance from Howard to Peabody. If so, his deed would be a fraud upon Estes, whose levy had been upon record nearly forty years.

The deed from Hayward to Bartlett, one of the defendants, was in 1858, and before the release from Howard to Hayward had been recorded. But the evidence shows that Bartlett, under whom the other tenant derives title, was fully aware of the existence of the deed from Howard to Peabody, and of the levy of Estes, for this levy is distinctly referred to in the release of Hayward, which constitutes his only title to the premises demanded.

As the grantee of Willis had no title, so he could convey none. *Defendants defaulted.*

RICE, DAVIS, KENT, WALTON and DICKERSON, JJ., concurred.